## Browning v. Moseley.

(Decided November 19, 1918.)

### Appeal from Muhlenberg Circuit Court.

Fraud—Sale of Stock—False Representation as to Sale to Other Persons.—Where a party, to induce another to buy bank stock, falsely represented to him that he had borrowed money on the faith of the stock, this false statement under the circumstances of this case was sufficient to authorize a cancellation of the contract.

TAYLOR, EAVES & SPARKS for appellant.

HUBERT MEREDITH and FREEMAN & STROUD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On March 22, 1915, Mrs. Moseley, the appellee, acting through her husband as agent, traded to the appellant Browning a pair of mules worth $500.00 for five shares of bank stock in the Bremen Deposit Bank.

The same day the trade was made, Mrs. Moseley claiming that Browning had made false and fraudulent representations concerning the value of the stock, which was alleged to be practically worthless, demanded of Browning a rescission of the contract and a return of the mules and upon his refusal to rescind the contract or return the mules she brought this suit to recover the mules or their value, $500.00.

The suit having been brought in equity, was prepared for trial and heard by the court and there was a judgment in favor of Mrs. Moseley cancelling the contract upon the ground that it was procured by fraud, and adjudging that Browning return the mules or pay to Mrs. Moseley their value, $500.00, with interest from the date of the trade. To obtain a reversal of this judgment Browning prosecutes this appeal.

The petition, after setting out the trade, averred that Browning falsely and fraudulently represented that the value of the bank stock exceeded $100.00 per share and that he, Browning, had been able to procure a loan of $250.00 thereon from the Farmers' State Bank, of which H. L. Stum was the cashier. It was further averred that the statement as to the value of the stock and the representation as to the fact that $250.00 had been borrowed on the credit of it, were made by Brown-

ing, knowing that they were false, for the purpose of inducing her agent to agree to accept the stock in payment of the purchase price of the mules, and that her agent did rely upon these representations and statements and except for his belief in the truthfulness thereof would not have accepted the stock in full payment or part payment of the purchase price of the mules. It was further averred that the stock had no market value and little or no actual value, and no loan value whatever, as Browning well knew, and that discovering these facts very shortly after the trade was made she refused to accept the stock and demanded a return of the mules. It was further averred that the representations and statements made by Browning amounted to a warranty of the value of the bank stock and that, on account of the breach of warranty, the trade should be cancelled and the mules restored.

An answer by Browning that denied all the material averments in the petition completed the pleadings.

The evidence for Mrs. Moseley showed that Browning (a) represented the value of the bank stock to be $550.00: (b) that it could be used as collateral and that he had borrowed on the credit of it from the Farmers' State Bank $250.00.

Concerning the alleged misrepresentation as to the value of the bank stock little need be said; first, because this representation may be treated as a mere expression of opinion, and second, because Moseley, the agent, before making the trade, made inquiry as to the value of the bank stock from the cashier of the Bremen Bank and was told by him that its "book value" was $110.00 a share. It is true that Moseley, the agent, relying at least to some extent on the representation of Browning as to the value of the stock, did not make as careful an investigation in respect to its value as he otherwise would have made, and if the case for Mrs. Moseley rested alone on what Browning said as to the value of the bank stock we would be inclined to the opinion that his representations were not sufficient to justify a rescission of the contract. But the weight of the evidence shows that Browning represented to Moseley that he had borrowed money from the Farmers' Bank on the credit of this stock $250.00, and there is no contradiction about the fact that the chief purpose in selling the mules was to raise at once some money, and it is further made plain

that Mrs. Moseley would not have parted with the mules except for the fact that she believed she could obtain a loan of money on the credit of this stock. Another material fact about which there is no contradiction in the evidence is that the Bremen Bank, soon after this transaction, was put in the hands of a receiver, and at the time the trade took place its failing condition was so well known by other banks that no money could be borrowed on the faith of Bremen bank stock. In fact, it appears that the Farmers' Bank had in its possession at the time this trade was made five shares of stock in the Bremen Bank and that Browning bought from this bank the five shares that he gave Mrs. Moseley in exchange for the mules for $250.00, and further that he knew at the time the trade was made, and when he stated that the bank stock was worth $550.00, that he could buy the five shares for $250.00. These circumstances, however, we do not regard as so material because we put our decision that the judgment appealed from should be affirmed upon the ground that the weight of the evidence shows (1) that Mrs. Moseley, through her agent, was induced to take this stock because she needed present money and believed it could be borrowed on the credit of the stock; (2) that Browning told the agent of Mrs. Moseley that he had borrowed from the Farmers' Bank $250.00 on the credit of this stock, which statement Browning, at the time, knew was false, but Mrs. Moseley, through her agent, did not, and was induced to make the trade by her belief in the truth of this representation, except for which she would not have traded the mules for the stock; (3) that on the same day the trade was made and a little while afterwards Mrs. Moseley, through her agent, discovered for the first time that no money could be borrowed on the credit of the stock and at once demanded a return of the mules; (4) that the agent of Mrs. Moseley, previous to the time the trade was made, relied, and had the right to rely, upon Browning's statement that he had borrowed $250.00 on the stock and was under no duty to, and did not, make any investigation whatever as to the truth or falsity of this statement, until after the trade had been made.

As the weight of the evidence fully supports the facts as we have stated them we find no difficulty in

holding that Mrs. Moseley was entitled to a cancellation of the contract as every material fact necessary to sustain an action for fraud and deceit was made out by her evidence.

There is a wide distinction between Browning's statement as to the value of the stock, as it is possible, although not at all probable, that Browning did not actually know its value, and was merely giving expression to an opinion, and his representation that he had borrowed on the faith of the stock $250.00. This latter statement, looking at the matter from any aspect, cannot be treated as the expression of an opinion. It was nothing more nor less than the declaration of a material fact that was largely if not entirely instrumental in inducing the agent of Mrs. Moseley to accept the stock made at a time when Browning knew the representation was false.

In cases presenting facts like this, there is scarcely any representation that could be made concerning the value of bank stock that would have more influence upon the intended purchaser than a statement that another well managed bank regarded the stock so highly that it would and did lend money on the credit of it alone. The influence of statements like this are matters of common knowledge and experience and so well known is their effect that it is a scheme often resorted to by sellers of stock to represent to intending purchasers that other men generally known to be safe, conservative business men, on whose judgment their acquaintances rely, have invested in the stock or accepted it as good collateral security.

We had a question like this in Southern Insurance Company v. Milligan, 154 Ky. 216. In that case an agent of an insurance company, who was selling its stock, for the purpose of inducing Milligan to buy some of the stock, represented to him that John M. Carson had purchased some of the stock, when in truth Carson had not done so, but on the contrary had refused to purchase the stock when solicited so to do. In a suit by Milligan to cancel notes given by him for the purchase price of the stock the court, in the course of the opinion, said, in speaking of the false representation made to Milligan, that Carson, who was a well known and good business man in the community, had purchased some of

the stock, said that: "It is a matter of common knowledge that persons who are approached with propositions relating to the investment of money are frequently influenced to either make or decline the investment by knowledge of what some friend or neighbor or acquaintance, in whose business ability they have confidence, has done in reference to the same character of investment. That agents soliciting subscriptions to stock appreciate the value of being able to tell persons they desire to trade with that this or that influential man in the community has made a like investment, is well illustrated by what took place in this case. . . .

"The false statement made by the agent in reference to Carson related to a fact that had passed, and was obviously made for the purpose of inducing appellee to purchase stock, and that it did have large influence in obtaining the subscription we have no doubt."

For the reasons stated the judgment is affirmed.